**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| AMP'D MOBILE, INC., | Case No. 07-10739 (BLS) |
| Debtor. | |
| AMP'D MOBILE, INC., | |
| Plaintiff, | |
| v. | Adversary No. 08-50269 (BLS) |
| PETER ADDERTON, | |
| Defendant. | Docket Reference Nos. 63 and 72 |

**OPINION**[1]

Before the Court are two related motions: (i) a motion for leave to dismiss Count VII of the amended complaint (the "Motion for Leave to Dismiss") [Docket No. 72] filed by Amp'd Mobile, Inc., the plaintiff in this adversary proceeding (hereinafter "Amp'd" or the "Plaintiff"), and (ii) a motion for leave to file a third-party complaint (the "Motion for Leave to File") [Docket No. 63] filed by Peter Adderton, the sole defendant in this adversary proceeding (the "Defendant"). For the following reasons, the Court will deny the Motion for Leave to Dismiss and grant the Motion for Leave to File.

---

[1]    This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. <u>BACKGROUND</u>

The Plaintiff formerly engaged in the business of operating a mobile phone and entertainment service that primarily targeted younger customers between the ages of eighteen and thirty. Amp'd distinguished itself from its competitors by offering a broader range of media content for download onto their customer's mobile handsets than was generally available at the time, including music, games, video, and on-demand live streaming content. The Defendant was the founder of Amp'd, and also served as a director and the CEO of the company.

On May 2, 2007, Amp'd and the Defendant entered into an employment and release agreement (the "Release Agreement") for the purpose of ending the Defendant's tenure as CEO. The Release Agreement provided the Defendant with severance and incentive payments, as well as a stock redemption agreement that called for the Defendant to sell 100,000 of his nearly 1 million shares in Amp'd to the company for $ 7 per share. The Release Agreement was subsequently approved by Amp'd's board of directors, with the Defendant abstaining. The Defendant then stepped down as CEO, and the stock redemption proceeded under the terms of the Release Agreement. The Defendant transferred 100,000 shares of stock to Amp'd, and received $ 700,000 in return.

Facing financial difficulties, Amp'd filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code") on June 1, 2007, less than a month after the Defendant stepped down as CEO. Amp'd announced at the outset of its

bankruptcy proceedings that its twin goals were to stabilize its relationships with certain critical service suppliers and to obtain financing sufficient to permit it to reorganize. Unfortunately, Amp'd could not obtain new financing.  Amp'd terminated services to its customers on August 2, 2007, after a brief but unsuccessful effort to sell itself as a going concern.

Amp'd subsequently commenced this adversary proceeding on February 1, 2008 by filing a complaint (the "Complaint") against the Defendant, seeking a disallowance of claim, the recovery of several purportedly fraudulent transfers stemming from the Release Agreement, and other remedies.  The Defendant filed an answer to the Complaint on March 18, 2008.  Amp'd then filed an amended complaint (the "Amended Complaint") on June 16, 2008, again seeking to avoid and recover certain transfers and invoking other remedies originally sought in the Complaint.  The Amended Complaint also alleges, for the first time, that the Defendant is liable under 8 Del. C. § 160 because the Defendant redeemed his stock at a time when the Plaintiff's capital was impaired (the "Delaware Corporate Law Claim").

On June 25, 2008, the Defendant filed an answer to the Amended Complaint.  Shortly thereafter, on August 12, 2008, the Defendant filed the Motion for Leave to File.  The Motion for Leave to File seeks leave for the purpose of impleading the directors of Amp'd who authorized the stock redemption that served as the basis for the Delaware Corporate Law Claim.  The Defendant contends that, under 8 Del. C. § 174, he would be

entitled to a contribution from these directors if Amp'd is ultimately successful in asserting the Delaware Corporate Law Claim against him.

On September 19, 2008, however, Amp'd filed the Motion for Leave to Dismiss, seeking to dismiss the Delaware Corporate Law Claim.  At this time Amp'd also filed its opposition to the Defendant's Motion for Leave to File on the grounds that the third-party complaint the Defendant wishes to file fails to state a claim for relief.

One week later, on September 26, 2008, the Defendant filed an opposition to the Motion for Leave to Dismiss, contending that he would suffer "plain legal prejudice" if Amp'd was granted leave to dismiss Count VII of the Amended Complaint, and that granting leave to dismiss was therefore improper under Federal Rule of Civil Procedure 41(a)(2).  According to the Defendant, this prejudice would arise because dismissal of the Delaware Corporate Law Claim would deprive him of his claim for contribution against Amp'd's directors.

Amp'd filed a brief in reply on October 1, 2008, and oral argument was heard on the Motion for Leave to Dismiss and the Motion for Leave to File on October 7, 2008.  The Court at that time took both matters under advisement.

Both motions have been fully briefed and argued.  They are ripe for decision.

4

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O).

## III. DISCUSSION

The Defendant argues that Amp'd should not be granted leave to dismiss Count VII of the Amended Complaint because doing so would cause the Defendant to suffer "plain legal prejudice" and thus would run afoul of the provisions of Federal Rule of Civil Procedure 41(a)(2), which Federal Rule of Bankruptcy Procedure 7041 makes applicable to adversary proceedings.  See FED. R. BANKR. P. 7041.

Federal Rule of Civil Procedure 41(a)(2) provides that once a defendant has served either an answer or a motion for summary judgment in response to an "action," the plaintiff may dismiss the "action" only with leave of court or a stipulation of dismissal signed by all parties who have appeared in the proceeding.  FED. R. CIV. P. 41(a)(2).  As noted by the Defendant, the courts have consistently refused to grant leave to dismiss under this provision where a defendant opposing the dismissal demonstrates that plain legal prejudice would result.  See, e.g., United States v. Outboard Motor Corp., 789 F.2d 497, 502 (7th Cir. 1986).  Under the circumstances of this case, however, Rule 41 does not govern the Court's decision whether to grant the

5

Plaintiff's Motion for Leave to Dismiss.

Applicable case law teaches that the "action" referred to in Rule 41(a)(2) is the dismissal of *all* causes of action one party asserts against another, and not just a single cause of action in a multi-count pleading, as is the case here. <u>See, e.g.</u>, <u>Gronholz v. Sears, Roebuck and Co.</u>, 836 F.2d 515, 518 (Fed. Cir. 1987) (collecting authorities); 8 James Wm. Moore et al, <u>Moore's Federal Practice</u> § 41.21 (3d ed. 2007).  This conclusion is based on the fact that both Rules 41(a)(1) and (a)(2) only apply their terms to dismissal of an "action," while Rule 41(b) provides that "a defendant may move to dismiss the action *or any claim* against it."  FED. R. CIV. P. 41(b) (emphasis added).  Because Rule 41(a)(1) and (a)(2) do not include similar express language indicating that they were intended to apply to the separate claims which make up an action, a motion for leave to dismiss fewer than all counts of a multi-count complaint is instead governed by Rule 15 of the Federal Rules  of Civil Procedure. <u>See</u> <u>Gronholz</u>, 835 F.2d at 518 (citing various cases).  In accordance with this authority and its persuasive reasoning, the Court will consider Amp'd's Motion for Leave to Dismiss under Rule 15.

Federal Rule of Civil Procedure 15(a), which Federal Rule of Bankruptcy Procedure 7015 makes applicable to adversary proceedings, states that once a responsive pleading is filed, as occurred here, a party may amend its pleading only with the opposing party's written consent, or by leave of court. The Rule

further provides that "[t]he court should freely give leave when justice so requires." FED. R. BANKR. P. 7015; FED. R. CIV. P. 15(A). As such, it is within the Court's discretion to grant or deny a motion for leave to amend, Foman v. Davis, 371 U.S. 178, 182 (1962), and "[t]he policy of the [F]ederal [R]ules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981); see also Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1186 n.19 (3d Cir. 1994).

Despite this policy of liberal amendment, however, the federal courts have developed an oft-recited list of circumstances that may justify denying leave to amend. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). See also In re Global Link Telecom Corp., 327 B.R. 711, 718 (Bankr. D. Del. 2005) (quoting Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.), 288 B.R. 189, 193 (Bankr. D. Del. 2003)). In fact, the Third Circuit has held that "prejudice to the non-moving party is the touchstone for denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993). Therefore, the Defendant's argument that he would be prejudiced if the Court grants the Motion for Leave to Dismiss is still relevant to the Court's inquiry under Rule 15.

7

The Court finds that granting Amp'd leave to dismiss Count VII of the Amended Complaint would cause the Defendant undue prejudice because it would prevent the Defendant from asserting in this proceeding his third-party complaint for contribution against the Amp'd's directors.  If the Amp'd is permitted to withdraw the Delaware Corporate Law Claim at this early stage of the litigation, then the Defendant would be prevented from even raising his claim for contribution under the provisions of 8 Del. C. § 174.[2]  This fact satisfies the burden that is placed on the nonmoving party opposing a motion to amend under Rule 15 to "demonstrate that its ability to present its case would be seriously impaired were  amendment allowed." Dole v. Arco, 921 F.2d 484, 488 (3d Cir. 1990). See also In re Fleming Companies, Inc., 347 B.R. 163 (Bankr. D. Del. 2006).  Denying the Motion for Leave to Dismiss, meanwhile, will not significantly change the burden on Amp'd in this litigation.  Thus, the Motion for Leave to Dismiss is denied, and the Motion for Leave to File is granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that granting Amp'd leave to dismiss the Delaware Corporate Law Claim would impose the prospect of undue prejudice on the Defendant.

---

[2]    It is not clear to the Court whether there is any meaningful prospect for recovery by Adderton on a contribution claim premised on 8 Del. C. §§ 160 and 174, but the Court concludes it is not proper to foreclose this possibility at the pleading stage in this instance.

Accordingly, the Court will deny the Motion for Leave to Dismiss, and grant the Motion for Leave to File.

An appropriate order follows.

By the Court,

_____

Dated: October 24, 2008

Brendan Linehan Shannon
United States Bankruptcy Judge

9